**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | |
|---|---|
| LINDA SCHUMANN, Administrator of the Estate of Thomas John Schumann, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | )     Case No. 3:25-cv-00083-NKM ) |
| K. CRAIG KENT, *et al.*, | ) ) |
| *Defendants*. | ) ) ) |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
AND PARTIAL STAY OF DISCOVERY**</u>

The Rector and Visitors of the University of Virginia (the "Board of Visitors") and the Commonwealth of Virginia (collectively, "Virginia Defendants"), by counsel and pursuant to Fed. R. Civ. P. 26(c), hereby move for a protective order and partial stay of discovery, and state as follows in support thereof.

## I.  INTRODUCTION

Shortly after Plaintiffs filed their Complaint on October 3, 2025, their counsel began speaking with various news outlets, including CBS 19 News in Charlottesville, explaining that the claims in this matter were just the beginning:

> What's going to happen in the coming weeks is additional lawsuits by those patients, *in a separate context*, will be filed in both state and federal court.

Suit filed against current, former UVA Health leaders, CBS 19 NEWS (Oct. 9, 2025), *available at* https://www.cbs19news.com/news/suit-filed-against-current-former-uva-health-leaders/article_40c9d607-e76b-41db-8478-84faa1fc5cdb.html (emphasis added). Alternatively stated, Plaintiffs began preparing their ship for a fishing expedition through this lawsuit at the outset. As further explained herein, federal courts reject these litigation tactics, and for good reason.

In accordance with the modified Pretrial Order in this matter—which directed a Rule 26(f) conference to "be held between January 12 and January 30, 2026" (ECF No. 53)—undersigned counsel provided a draft discovery plan for discussion prior to the Rule 26(f) conference. While this draft discovery plan incorporated several deadlines set forth in the Court's December 8th Order, counsel for the parties proceeded to discuss anticipated conflicts in connection with the completion of fact discovery and deadlines applicable to expert disclosures. Another discussion point concerned the anticipated relevance of Electronically Stored Information ("ESI"), which is common in 21st-century litigation. However, what became uncommon were Plaintiffs' subsequent edits to the draft discovery plan, imposing a "45 day[] . . . substantially complete" deadline and "initial core production" with respect to ESI. *See* Plaintiffs' Redline Edits to Joint Discovery Plan (Jan. 14, 2026), attached hereto as **Exhibit A** at ¶¶ 4, 9(b). Plaintiffs' edits further provided that production of undefined "non-controversial categories" of ESI could occur "[w]hile the Parties work in good faith to finalize an ESI Protocol." *Id.* at ¶ 9.

Three days later, Plaintiffs served their first set of discovery requests on the Virginia Defendants and the University of Virginia Physicians Group ("UPG"), which consisted of an interrogatory with twenty subparts and ten requests for production. *See* **Exhibit B**. Then, on January 20, 2026, Plaintiffs served a second set of requests for production on all Defendants. *See* **Exhibit C**. Notably, the vast scope of these discovery requests was never raised or discussed amongst the parties during the Rule 26(f) conference, nor was there any discussion of a "substantially complete" or "initial core production" of ESI. In order to address these issues and propose limitations on discovery with respect to the Virginia Defendants, undersigned counsel requested a meet and confer pursuant to Fed. R. Civ. P. 26(c). *See* **Exhibit D**.

On January 26, 2026, counsel for the parties attended a telephonic meet and confer[1] in an attempt to resolve the aforementioned disputes in connection with Plaintiffs' edits to the Joint Discovery Plan, as well as proportionality issues in connection with the discovery served on January 16th and 20th. Counsel for the parties also discussed a recent decision by Judge Yoon in *Convisser v. Exxon Mobil Corp.*, No. 3:24-cv-00072, 2024 WL 4833649 (W.D. Va. Nov. 19, 2024), where this Court recognized that good cause for a stay of discovery can exist when subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1). Plaintiffs' counsel later agreed to withdraw their edits to the Joint Discovery Plan in connection with the 45 day "substantially complete" and "initial core production" of ESI, but did not agree to confine discovery served on the Virginia Defendants to jurisdictional discovery.

Given the expansive scope of discovery sought by Plaintiffs at the outset of this matter, the Virginia Defendants' pending motion to dismiss that challenges subject matter jurisdiction based on sovereign immunity, and against the background of Plaintiffs' counsel proceeding with "additional lawsuits . . . in a separate context," the Virginia Defendants submit this is "a particular case [where] it would be wise to stay discovery on the merits until [certain challenges] have been resolved." 8 Charles Alan Wright et al., Federal Practice and Procedure § 2040, at 521–22 (2d ed. 1994) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided."). Contrary to Plaintiffs' assertions during the meet and confer, the Virginia Defendants' decision to abide by the deadlines set forth in the Court's pretrial orders and attend the Rule 26(f) conference in good faith does not

---

[1] Counsel for the University of Virginia Physicians Group ("UPG") [Woods Rogers PLC], counsel for Drs. Kent, Kibbe, Horton, and Tsung [Baker Donelson PC], and counsel for Dr. Kim de la Cruz [O'Hagan Meyer, PLLC] also attended the meet and confer on January 26, 2025. Counsel for Dr. Preventza [Christian & Barton LLP] filed a Motion to Withdraw as Counsel (ECF No. 76) shortly before this meet and confer was scheduled to begin and did not attend.

result in a waiver of their right to move for a protective order and partial stay of discovery at this time.[2]

Rule 26(f)'s directive that "parties must confer as soon as practicable" is not automatically supplanted by a pending motion to dismiss, and the Virginia Defendants' compliance with Orders issued by this Court should not be held against them as they sought to determine whether an agreement as to the scope of discovery could be reached. Indeed, if the Virginia Defendants had stonewalled or otherwise refused to participate in the Rule 26(f) conference along with other co-defendants—or objected to the setting of a trial date—Plaintiffs could have alleged violation of a court order and moved to compel. *See, e.g.*, *AFT Michigan v. Project Veritas*, 294 F. Supp. 3d 693 (E.D. Mich. 2018) (rejecting defendants' argument that they need not participate in Rule 26(f) conference while their motion to dismiss was pending); *Plastic Ominum Auto Inergy Indus. Sa De VC v. MCC Development, Inc.*, 2022 WL 16052540, at *1 (E.D. Mich. Jan. 5, 2022) (quoting Fed. R. Civ. P. 26(f)) ("Defendant's reliance on its motion to dismiss [in refusing to participate in Rule 26(f) conference] lacks merit; that motion did not automatically stay discovery or defendant's obligation to 'in good faith [ ] agree to a discovery plan' 'as soon as practicable'").

Moreover, the Virginia Defendants do not request a blanket stay of all discovery obligations or deadlines in this matter—should Plaintiffs serve discovery requests limited to jurisdictional discovery, the Virginia Defendants will provide responses to such discovery. The

---

[2] The Joint Discovery Plan that is expected to filed in this matter references the instant motion and with respect to the Virginia Defendants provides, in relevant part: "[T]he Virginia Defendants will abide by their obligations under Fed. R. Civ. P. 26(a)(1)(A) and respond to all jurisdictional discovery served by Plaintiffs. As to merit-based discovery, the Virginia Defendants will serve objections to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents and Second Set of Requests for Production of Documents to All Defendants, and notice the aforementioned motion for a hearing consistent with paragraph 19 of the Court's Pretrial Order (ECF No. 37) to seek its timely adjudication."

Virginia Defendants are also prepared to move forward with service of initial disclosures and will fulfill their obligations under Fed. R. Civ. P. 26(a)(1)(A).[3] However, given pending challenges to the Complaint on the basis of sovereign immunity, the Virginia Defendants respectfully request that they be protected from the oppression and undue burden that would result from enforcement of Plaintiffs' overly broad discovery requests, which seek impermissible "discovery on discovery" or otherwise fail to meet Rule 26(b)(1)'s proportionality requirement.

## II.    BACKGROUND

On October 3, 2025, Plaintiffs filed a Complaint for Damages and Equitable Relief consisting of seven counts: (1) Racketeer Influenced and Corrupt Organizations Act, Violations of 18 U.S.C. § 1962(c); (2) Racketeer Influenced and Corrupt Organizations Act (Conspiracy), Violation of 18 U.S.C. § 1962(d) / Conspiracy to Violate 18 U.S.C. § 1962(c); (3) False Claims Act (Retaliation), Violations of 31 U.S.C. § 3730(h); (4) Virginia Fraud Against Taxpayers Act, Violation of Va. Code § 8.01-216.8; (5) Virginia's Fraud and Abuse Whistleblower Protection Act (Retaliation), Violations of Va. Code § 2.2-3011; (6) Negligent Hiring and Retention; and (7) Defamation, Libel, and Slander, Violations of Va. Code § 8.01-45 et seq. *See* ECF No. 1.

As further detailed in the Virginia Defendants' Memorandum in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6):

> Distilled to their essence, Plaintiffs' allegations across Counts 1–7 rests on the theory that Defendants K. Craig Kent ('Kent'), Melina Kibbe ('Kibbe'), Wendy Horton ('Horton'), Allan Tsung ('Tsung'), Ourania Preventza ('Preventza'), and 'other unnamed co-conspirators' formed and operated a conspiratorial enterprise—defined in the Complaint as the "Kent Enterprise." *See* Compl. ¶ 1. Critically, the Complaint does not allege that either the Board of Visitors or the Commonwealth of Virginia formed, directed, or participated in the "Kent Enterprise."

---

[3] The Virginia Defendants intend to proceed with service of initial disclosures in a manner that does not impose an undue burden at this time and without waiver of their objections to merit-based discovery addressed herein.

ECF No. 64 (Page 9 of 36). According to the Complaint, the "operative core" of this alleged enterprise involved "fraudulent billing practices and falsification of medical records." Compl. ¶ 1. The Complaint then alleges the Physician Plaintiffs were subject to "retaliatory actions," but fails to identify any specific conduct by the Virginia Defendants and instead relies on conclusory allegations that "the leadership of the Entity Defendants"[4] acted in concert with the Kent Enterprise to "intentionally harass[] and retaliate[] against the Physician Plaintiffs to dissuade them from attending or testifying in proceedings, from reporting criminal conduct, and from assisting in enforcement actions." Compl. ¶ 46.

The Complaint further asserts—without factual support—that "the named defendants [undefined] also caused the deaths of Thomas John Schumann and James Gordon Smith." Compl. ¶ 52. Based on that allegation, administrators for the estates of Schumann and Smith bring claims "to recover damages to their businesses and properties resulting from the Kent Enterprise and its racket." Compl. ¶ 53. As pled, those claims appear to be Counts 1 and 2—which are asserted on behalf of "All Plaintiffs"—whereas Counts 3 through 6 are asserted only on behalf of "the Physician Plaintiffs," and Count 7 is asserted by a smaller subset of the Physician Plaintiffs (Dr. Yount and Dr. Kern).

By Order dated November 12, 2025, the Court granted an unopposed motion for extension of time to file responsive pleadings. *See* ECF No. 32. Pursuant to this Order and the briefing schedule set forth therein, all Defendants proceeded to file motions to dismiss on January 9, 2026, with Plaintiffs scheduled to file their opposition briefs by February 9, 2026, and Defendants to file

---

[4] Plaintiffs' definition of "Entity Defendants" in the Complaint excludes the Commonwealth of Virginia but appears to include the Board of Visitors by virtue of "UVA Affiliates" encompassing "[t]he BOV [Board of Visitors], collectively with the UVA, UVAHS, UVAMC, [and] UVASOM." Compl. at 2.

reply briefs by February 16, 2026. Notably, the memoranda filed in support of these motions to dismiss contain arguments addressing sovereign immunity and Plaintiffs' lack of standing under Rule 12(b)(1), as well as the Complaint's failure to state a claim for relief under Rule 12(b)(6). *See* ECF No. 62 (Defendant de la Cruz), ECF No. 64 (Virginia Defendants), ECF No. 66 (Defendant University of Virginia Physicians Group), ECF No. 68 (Defendants Kent, Kibbe, Horton, and Tsung), ECF No. 71 (Defendant Preventza). The bar imposed by the Eleventh Amendment is particularly strong with respect to claims asserted against the Virginia Defendants, as this Court has repeatedly held that "the University of Virginia is an arm of the state entitled to eleventh amendment protection." *Wilson v. Univ. of Va.*, 663 F. Supp. 1089, 1092 (W.D. Va. 1987) (citations omitted).

Before the filing of responsive pleadings, on December 2, 2025, the parties jointly requested that the Court modify certain pretrial deadlines. *See* ECF No. 51. This occurred after counsel for UPG and Plaintiffs' counsel contacted the Scheduling Clerk to obtain available trial dates, as directed by the Pretrial Order. *See* ECF No. 39. At the time, counsel for all Defendants expressed a preference to obtain trial dates in 2027. However, Plaintiffs' counsel stated that they were unwilling to consider dates in 2027, and asked the Scheduling Clerk to provide available dates in 2026. In order to avoid a scheduling dispute during the first few weeks of litigation, the majority of Defendants agreed to proceed with dates in 2026, although counsel for Defendant Preventza notified Plaintiffs of a scheduling conflict with another trial set to begin in October 2026. *See* ECF No. 51 at n.1. Thereafter, the Court issued an Order granting the Joint Motion to Modify Pretrial Order, which directed the parties to proceed with a Rule 26(f) conference between January 12 and January 30, 2026.

As summarized in Section I above, Defendants bring the instant motion based upon irreconcilable disputes that surfaced during the parties' Rule 26(f) conference, and shortly thereafter, when Plaintiffs proceeded to serve two sets of discovery requests. Specifically, after redlining changes to the initial draft Joint Discovery Plan—including edits that imposed a "45 day[] . . . substantially complete" ESI production deadline—Plaintiffs served interrogatories and requests for production that sought the identification of "every electronic database, software application, platform, System, repository, messaging System, or tool (for brevity, 'System') that has been used, accessed, or maintained by Defendants or on their behalf from January 1, 2018 to the present." *See* **Exhibit B** at 6 (ROG No. 1). This particular interrogatory included twenty subparts related to the identification of "Systems," and was followed by a request for production seeking "a Document (or Documents) sufficient to identify every System" during the same eight-year period. *Id.* at 9 (RFP No. 2).

Plaintiffs' other requests for production in this first set double down on impermissible "discovery on discovery," and seek:

> [A] written certification, signed by a knowledgeable corporate representative, stating that: "After reasonable inquiry, the foregoing production in response to Request for Production No. 1 identifies all Systems used by Defendants during the relevant time period that contain potentially responsive information." This certification shall identify the individual(s) responsible for compiling the inventory.

> [A]ll data maps, information governance data maps, systems of record inventories, application inventories, data flow diagrams, or similar Documents (including Documents which collectively constitute the foregoing Documents) sufficient to identify all electronic Systems, databases, repositories, and applications used by Defendants to create, store, transmit, or modify information during the relevant time period. Additionally and in the alternative, produce the Documents that collectively constitute your Data Map, including application inventories, IT asset lists, vendor contracts, and governance materials.

> [A]ll data maps, System architecture diagrams, information governance Documents, or IT inventories that reflect or describe the relationship among the Systems identified in response to Request for Production No. 1.

[A]ll Documents sufficient to show retention, archiving, and deletion settings for the Systems identified in Interrogatory No. 1 during the Relevant Period, including configuration screenshots, exports, retention labels, and policies (e.g., Microsoft 365 retention policies), and any change logs reflecting modifications to retention settings since January 1, 2018.

[A]ll litigation hold notices, custodial hold lists, acknowledgments, preservation instructions, communications with IT/records management regarding preservation, and Documents sufficient to show steps taken to suspend auto-deletion or preserve relevant repositories, including Teams chats, channels and mobile device sources to the extent used for work communications.

Documents sufficient to describe Defendants' capability and process to collect/export Microsoft Teams and other M365 data for legal production, including chats, channels, attachments, meeting chats, and associated metadata, and any SOPs, guidance, or vendor documentation used for such collections.

Documents sufficient to identify the existence, location, retention period, and export capability for audit logs, access logs, and change logs for the Systems identified in Interrogatory No. 1, including (where applicable) logs reflecting (i) user access, (ii) edits/updates, (iii) role/permission changes, and (iv) data exports.

Documents sufficient to describe Defendants' backup, disaster recovery, and archival systems for the Systems identified in Interrogatory No. 1, including backup schedules, retention periods, and the circumstances under which archived/backed-up data can be restored and searched.

[P]olicies and Documents sufficient to describe (i) whether Defendants permit or rely upon personal devices for work communications (including SMS/iMessage and third-party messaging apps), (ii) any mobile device management (MDM) in place, and (iii) preservation steps taken for custodians likely to have used mobile devices for work communications.

**Exhibit B** at 11–13 (RFP Nos. 2–10).

Similar concerns implicating relevance, proportionality, and undue burden also plague Plaintiffs' Second Set of Requests for Production of Documents. *See* **Exhibit C**. In the majority of instances, the various subparts of these requests remain untethered to documents or communications involving either the Physician Plaintiffs, Widowed Spouse Plaintiffs, or Physician Defendants. Instead, these requests define "Providers" to include several different entities, including: (a) UVA Health; (b) University of Virginia Medical Center; (c) University of

Virginia Physicians Group; and (d) any billing entity submitting claims under their NPIs or CCNs.[5]

This expansive definition results in discovery requests that seek:

> [A]ll Communications and/or other Documents amongst You[6] and any of the other Defendants *and/or Providers* and/or any federal, state, or local government agency and/or any private insurer regarding claims and Medical Billing Modifier data, including:
>
> a. *All Medicare claims data submitted by or on behalf of the Providers* during the Time Period that include any of the following Medical Billing Modifiers: (i) -22, (ii) -25, (iii) -59, (iv) -62 (Co-Surgeon), (v) -82 / -80 (Assistant Surgeon), (vi) Teaching physician Medical Billing Modifiers;
>
> b. *All Medicare claims data submitted by or on behalf of the Providers* during the Time Period that includes any of the following CPT Codes: (i) 99202, (ii) 99203, (iii) 99204, (iv) 99205, (v) 99212, (vi) 99213, (vii) 99214, (viii) 99215, (ix) 99221, (x) 99222, (xi) 99223, (xii) 99231, (xiii) 99232, (xiv) 99233, (xv) 99234, (xvi) 99235, (xvii) 99236, (xviii) 99238, (xix) 99239, (xx) 99242, (xxi) 99243, (xxii) 99244, (xxiii) 99245, (xxiv) 99252, (xxv) 99253, (xxvi) 99254, (xxvii) 99291, and (xxviii) 99292;
>
> c. All Medicare claims data submitted by or on behalf of the following NPI numbers: (i) 1902059447 (Kim de la Cruz), and (ii) 1508984303 (Ourania Preventza);
>
> d. For each claim identified in response to (3) [sic], above, produce: (i) CPT/ HCPCS codes, (ii) Medical record Medical Billing Modifiers applied, (iii) Rendering, billing, and assistant NPIs, (iv) Dates of service, (v) Amounts billed and amounts paid, and (vi) Claim status (paid, denied, adjusted); and
>
> e. Aggregate statistical reports or internal analytics reflecting: (i) Frequency of Medical Billing Modifier usage *by the Providers*, (ii) Comparison of the Providers'

---

[5] Plaintiffs include two of the Physician Defendants along with the aforementioned entities when defining "Providers," specifically: Ourania Preventza and Kim de la Cruz. *Id.*, Definitions and Instructions ¶ 8.

[6] Plaintiffs' Second Set of Requests for Production of Documents define "You" and "Your" to mean "one of the following Defendants: K. Craig Kent, Melina Kibbe, Wendy Horton, Allan Tsung, Ourania Preventza, Kim de la Cruz, The Rector and Visitors of the University of Virginia, the University of Virginia Physicians Group, and Commonwealth of Virginia, together with their predecessors, and any of their present or former owner, employees, agents, representatives, attorneys, investigators, or any other person or entity acting on behalf of these individuals and entities at any time." Plaintiffs further define "You" and "Your" as encompassing "any and all present or former parent companies, affiliates, subsidiaries, successors, and predecessors, and their respective owners, officers, agents, representatives, employees, and all other persons or entities acting on their behalf at any time." *Id.*, Definitions and Instructions ¶ 5.

Medical Billing Modifier usage to: [1] State average, [2] Peer academic medical centers, and [3] National benchmarks.

**Exhibit C** at 7–8 (2nd RFP No. 1). As with Plaintiffs' first set of discovery requests, this second set states: "Unless otherwise specified, these Requests seeks Documents from *January 1, 2018 to present*, including electronically stored information ('ESI') in all forms, including emails, text messages, messaging apps (such as Epic and Epic MyChart messaging, Microsoft Teams, Zoom, Slack, Signal, WhatsApp, Telegram, Messenger, Viber, Beeper, Google Messages, Apple iMessage, other text-messaging Systems, and any other mobile-device-based Systems, etc., drafts, metadata, audit logs, and deleted materials." *Id.* at 7 (emphasis added).

The only logical reading of these requests is that Plaintiffs demand Medicare claims data and other medical communications and documents during an eight-year period of time, regardless of the attending physician and encompassing a period of time that extends two years before Defendant Kent was "install[ed] . . . as Executive Vice President for Health Affairs at UVA and Chief Executive Officer at UVAHS." Compl. ¶ 3. As an initial matter, these expansive requests fail to track the timeline of allegations set forth in the Complaint. *See, e.g.*, Compl. ¶¶ 32, 34, 94, 114, 119. Relevance and proportionality concerns also arise separately based on the substance of the discovery sought. Again, this is due to Plaintiffs' expansive definition of "Provider," which appears in all requests for production apart from one.[7] Even when "Provider" does not form the initial basis for the source(s) of discovery sought, the remaining request seeks:

> [A]ll Communications and/or other Documents amongst You and any of the other Defendants *and/or any federal, state, or local government agency and/or any private insurer* regarding payments, recoupments, and self-disclosures, including

---

[7] During the meet and confer held amongst counsel on January 26, 2026, Plaintiffs' counsel stated they would provide a revised definition for "Provider(s)" by e-mail, but would not amend or reissue their Second Set of Requests for Production of Documents to All Defendants with that revised definition. As of the filing of this motion, the Virginia Defendants have not received a revised definition for "Provider(s)" via e-mail or otherwise.

all records of: (a) Overpayment determinations, (b) Voluntary repayments, (c) Self-disclosures, and (d) Settlement discussions or agreements involving the Providers.

**Exhibit C**, 2nd RFP No. 4 (emphasis added). Apart from "[s]ettlement discussions or agreements involving the Providers" being privileged and protected from disclosure, Plaintiffs again make no attempt to connect the communications or documents sought through this request to either the Physician Plaintiffs, Widowed Spouse Plaintiffs, or Physician Defendants. Similar to the expansive definition of "Provider," this is because Plaintiffs' use of "You" in their discovery requests encompasses not only the Physician Defendants, but also "The Rector and Visitors of the University of Virginia, the University of Virginia Physicians Group, and the Commonwealth of Virginia," as well as "any of their present or former owners, employees, agents, representatives, attorneys, investigators, or any other person or entity acting on behalf of these individuals and entities at any time." *Id.*, Definitions and Instructions ¶ 5.

It is not hyperbole to posit that, as currently drafted, Plaintiffs' discovery requests encompass a data collection exceeding 20 terabytes.[8] Even with search terms applied to this incredibly large amount of data, that does not relieve the Virginia Defendants from the burden of heightened data processing costs at this scale, nor does it account for the expenses that will be incurred when accounting for PHI/PII redactions and privilege review even if deduplication and the application of search terms narrow this universe. During the parties' meet and confer on January 26, 2026, Plaintiffs' counsel agreed to temporarily "stay" enforcement of their First Set of Interrogatories and Requests for Production, although they declined to actually withdraw this

---

[8] While different sources of ESI (e.g., e-mails, electronic health records, billing data) exist in different formats and some files will be able to be compressed or reduced to plain text, when applying Plaintiffs' "January 1, 2018 to present" discovery period to data retained by both UVA's Records & Information Management Office and UVA Health's Health Information Management, the amount of data retained exceeds 20 terabytes. *See* Section IV(B) *infra*.

discovery. Plaintiffs' counsel also relayed they would provide a list of approximately forty (40) custodians for review. As of the date of this filing, the Virginia Defendants have not received a list of custodians for review. However, even with custodians reduced to a specific number for purposes of ESI collection, the eight-year discovery period set forth in Plaintiffs' requests would continue to produce an unworkable set of data, especially with respect to the "Medicare claims data" sought in Plaintiffs' Second Set of Requests for Production of Documents. *See* Section IV(B) *infra*.

Courts have limited civil discovery over far less, especially in cases where a "threshold question" of sovereign immunity is raised. Because Defendants take the position that these discovery tactics by Plaintiffs are improper and result in an undue burden that is not proportional to the needs of this case, undersigned counsel respectfully seeks relief under Rule 26(c) and requests a partial stay of discovery as further explained below.

## III.    STANDARD OF REVIEW

Under Rule 26(b)(1), discovery is limited to non-privileged matters that are relevant to a party's claim or defense and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In turn, Rule 26(b)(2)(C) requires the court to weigh "the burden or expense of the proposed discovery" against "its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). Rule 26(c)(1) further authorizes a court, for good cause, to issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding overly broad discovery, prescribing a different method of discovery, or limiting the scope of discovery disclosures to certain matters. *See* Fed. R. Civ. P. 26(c)(1).

The Supreme Court of the United States has also recognized that when a defense of immunity has been raised, "'[u]ntil this threshold immunity question is resolved, discovery should not be allowed.'" *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Sovereign immunity in particular shields a party "from the burdens of becoming involved in any part of the litigation process, from pretrial wrangling to trial itself." *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992). Indeed, an entity's "full enjoyment of [its] sovereign immunity is irrevocably lost once [it] is compelled to endure the burdens of litigation." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1172 (10th Cir. 1998); *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990) (recognizing that "sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits") (internal quotations omitted).

Lastly, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "In determining whether a stay is appropriate a court should 'balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019) (Moon, J.) (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013)). These factors include "the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay." *Crowell v. N.C.*, No. 1:17-cv-515, 2018 WL 6031190, at *4 (M.D.N.C. Nov. 16, 2018).

## IV.    ARGUMENT

Rule 26(c)(1)(D) permits a court, "for good cause," to issue a protective order "forbidding

inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."

Fed. R. Civ. P. 26(c)(1)(D). "Where 'a particular issue may be dispositive,' this rule permits a

court to 'stay discovery concerning other issues until the critical issue is resolved.'" *Haley v. FRC

Balance LLC*, No. 1:23-cv-666, 2024 WL 2494616, at *2 (E.D. Va. Feb. 28, 2024) (quoting *Vivid

Techs.*, *Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999)). Courts within the

Fourth Circuit also apply the principles set forth under Rule 26(b)(2) to deny discovery that seeks

sweeping categories of documents untethered to claims or defenses at issue and otherwise impose

an undue burden on the producing party. When discovery requests are so broad as to encompass

materials that have no direct relation to the claims or defenses at issue, courts find that such

requests "have every indicia of the quintessential fishing expedition." *Cook v. Howard*, 484 Fed.

App'x 805, 813 (4th Cir. 2012).

### A.    Because the Virginia Defendants' motion to dismiss raises a threshold question of sovereign immunity in challenging subject matter jurisdiction, merit-based discovery should be stayed until the Court rules on that threshold question.

Here, the Court should recognize the sovereign immunity due to the Virginia Defendants

and that the discovery sought by Plaintiffs encompasses materials that have no direct relation to

the claims or defenses at issue in this litigation. A recent decision issued by this Court provides

appropriate guidance under these circumstances. In *Convisser v. Exxon Mobil Corporation*, No.

3:24cv00072, 2024 WL 4833649 (W.D. Va. Nov. 19, 2024), Judge Yoon was confronted with a

175-page complaint premised on allegations that "Defendants engaged in a sweeping business

conspiracy in violation of the federal Racketeer Influenced and Corrupt Organizations ('RICO')

Act and Virginia state law." *Id.* at *1. After Plaintiff filed a motion for leave to file a second

amended complaint, a group of defendants renewed a motion to stay all deadlines and proceedings other than those related to defendants' anticipated motions to dismiss. While the Court denied defendants' request to stay all litigation deadlines apart from briefing on the motions to dismiss, the Court ultimately found "good cause for delaying both the deadline for issuing a Rule 16(b) scheduling order and the deadline for the parties to hold a Rule 26(f) conference" and stated "[t]he court will issue a Rule 16(b) scheduling order, if necessary, after resolving Defendants' motion to dismiss." *Id.* at *4.

Judge Yoon's decision to stay entry of a Rule 16(b) scheduling order is consistent with other decisions issued by federal courts when weighing issues of judicial economy during the pendency of motions to dismiss challenging subject matter jurisdiction. This is because "[q]uestions of jurisdiction should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties. Thus, a stay of discovery during the pendency of a dispositive motion asserting a jurisdictional challenge may be appropriate and efficient." *Sandoval v. United States*, 2011 WL 3682768, at *2 (D. Colo. Aug. 23, 2011) (citing *Behrens v. Pelletier*, 516 U.S. 299, 308 & 310 (1996) (noting that discovery can be particularly disruptive when a dispositive motion regarding immunity is pending)); *Moore v. Busby*, 92 F. App'x 699, 702 (10th Cir. 2004) (affirming trial court's stay of discovery pending resolution of absolute immunity question); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) ("[T]he Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'").

In *Sandoval v. United States*, the defendant "raise[d] sovereign immunity as a complete defense to Plaintiff's claims." *Sandoval*, 2011 WL 3682768, at *2. After an analysis of applicable federal precedent, including cases from the Supreme Court of the United States, the district court

found that "Defendant raises sovereign immunity as a jurisdictional challenge in the motion to dismiss, and its defense is primarily one of law. Thus, the court concludes that it must exercise its discretion in favor of not subjecting Defendant to possibly unnecessary discovery or other pretrial proceedings, until the immunity and jurisdictional questions are resolved." *Id.* The same result should follow here, when "'balanc[ing] the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019) (Moon, J.) (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013)).

**B.  The factors to be considered when determining whether a stay is warranted fall in the Virginia Defendants' favor.**

As articulated by this Court, "[t]hese factors include 'the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay.'" *Stinnie*, 396 F. Supp. 3d at 658 (quoting *Crowell v. N.C.*, No. 1:17-cv-515, 2018 WL 6031190, at *4 (M.D.N.C. Nov. 16, 2018)). Here, the first factor weighs heavily in favor of a stay. The Virginia Defendants' motion to dismiss not only challenges this Court's subject matter jurisdiction, which must be satisfied at all stages of litigation, but is poised to dispose of all claims against the Virginia Defendants in their entirety.[9] Thus, judicial resources would be best conserved by imposing a stay until the Virginia Defendants' subject matter jurisdiction challenge is resolved.

---

[9] See ECF No. 64 at Page 8 of 36 ("Because the jurisdictional defect here cannot be cured, Plaintiffs' claims against the Virginia Defendants—Count 1 (RICO), Count 2 (RICO Conspiracy), and Count 3 (False Claims Act ('FCA') Retaliation)—must be dismissed. Once those claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.").

As to the second factor, the hardship and inequity that will befall the Virginia Defendants if a stay is denied is immense, particularly in light of the extraordinary scope of discovery Plaintiffs have already served. Despite some concessions from Plaintiffs' counsel during the meet and confer on January 26, 2026, one discovery issue that remains disputed is a relevant and reasonable discovery period. Plaintiffs' insistence that "January 1, 2018 to present"—a period of time exceeding eight years—is reasonable and proportional to the needs of this case finds no basis in reality, nor support from allegations in the Complaint itself. And while "a party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. An exception to that general rule is when the discovery request is overly broad or unduly burdensome on its face." *Sheppheard v. Justice*, 2024 WL 3166065, at *6 (S.D. W. Va. June 25, 2024). But even if the Court were unconvinced of the extraordinary breadth of the discovery sought after reviewing the interrogatories and requests for production previously discussed, the Virginia Defendants have already undertaken efforts to quantify the discovery burden as it currently stands. *See* **Exhibit E**, Declaration of Anita Vannucci (Jan. 30, 2026) (hereinafter "Vannucci Decl."); **Exhibit F**, Declaration of Scottie Frey (Jan. 30, 2026) (hereinafter "Frey Decl."); **Exhibit G**, Declaration of Joan Washburn (Jan. 30, 2026) (hereinafter, "Washburn Decl.").

As summarized by personnel from both Records & Information Management and Health Information Technology at UVA Health, the amount of data subject to collection over Plaintiffs' eight-year period results in an unworkable and overly burdensome amount of data from an initial processing standpoint. *See* Vannucci Decl. ¶¶ 6–8; Frey Decl. ¶¶ 5–13. Notably, any limitation of custodians within e-mail and file share systems does not alter the vast universe of "Medicare claims data" Plaintiffs have sought over eight years and without reference to any individual providers,

apart from Dr. de la Cruz and Dr. Preventza. *See* **Exhibit C** at 8 (2nd RFP No. 1). As drafted, Plaintiffs' second set of discovery requests would involve the collection of data containing any of the six identified Medical Billing Modifiers or twenty-eight different CPT Codes—regardless of the physician(s) involved—all during a period of time exceeding eight years. *Id.* Based on a preliminary review conducted by a Director at UVA Health Information Management, a search and collection of records containing either the Medical Billing Modifiers or CPT Codes identified in Plaintiffs' discovery requests returns a completely unworkable amount of data, expected to comprise at least 110,080,000 pages of Epic EMR records during the time period of January 1, 2018 to present. *See* Frey Decl. at ¶ 11.

In turn, this data would need to be transmitted to counsel for review. Based on the size of ESI collections examined by both the Records & Information Management Office and Health Information Management at UVA Health, the eDiscovery processing and hosting costs alone are extraordinary. *See* Washburn Decl. ¶¶ 4–12. By way of example, e-Data transformation and metadata extraction costs for data exceeding 20 TBs is approximately $804,950 before storage costs are even accounted for. *Id.* ¶¶ 5, 10. Once ESI is through this initial processing phase, it must be hosted in either an ECA Workspace or Review Workspace on Relativity, for which storage costs are assessed based on the total amount of data. *Id.* ¶¶ 6, 11. Here, the storage of data that exceeds 20 TB in these workspaces results in monthly charges of approximately $58,318/month (for 5.2 TB of .pst files) and $335,160/month (for 16TB of non-OCR imaged text PDFs). *Id.* Alternatively stated, before the costs associated with eDiscovery project management incurred by individual timekeepers is even accounted for, the processing and hosting of approximately 20 TB of data will exceed $1 million in costs within the first month.

As to the last factor addressing potential prejudice to Plaintiffs in the event of a stay, the Virginia Defendants do not seek a blanket stay of all discovery. As is common in cases where jurisdictional challenges arise, the Virginia Defendants have no objection to Plaintiffs' serving jurisdictional discovery. Additionally, the Virginia Defendants intend to comply with their initial disclosure obligations, such that, if the claims against them are not completely disposed of on sovereign immunity grounds, the parties can proceed with merit-based discovery. Lastly, because comprehensive litigation holds and preservation notices were effectuated before this litigation began, the status quo of available information will continue to be maintained during any partial stay. For these reasons, the Court should conclude that a partial stay of discovery is appropriate, pending its adjudication of the Virginia Defendants' motion to dismiss.

## V. CONCLUSION

Based on the foregoing, Defendants The Rector and Visitors of the University of Virginia and the Commonwealth of Virginia respectfully request that the Court issue an Order entering a protective order as set forth in the proposed Order attached hereto and grant a partial stay of discovery to remain in place until adjudication of the Virginia Defendants' motion to dismiss.

Dated: January 30, 2026

Respectfully submitted,

*/s/ Robert J. Farlow*
John L. Brownlee (VSB No. 37358)
Robert J. Farlow (VSB No. 87507)
Laura Supple (VSB No. 99640)
Ashley Akers (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Tele: (703) 720-8600
Fax: (703) 720-8610
john.brownlee@hklaw.com
robert.farlow@hklaw.com

laura.supple@hklaw.com
ashley.akers@hklaw.com

*Counsel for The Rector and Visitors
of the University of Virginia, and the
Commonwealth of Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2026, I filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notice of such filing to all counsel of record.

*/s/ Robert J. Farlow*
Robert J. Farlow (VSB No. 87507)