# EXHIBIT D

# Holland & Knight

200 South 10th Street, Suite 1000 | Richmond, VA 23219 | T 804.799.6595 | F 804.500.5353
Holland & Knight LLP | www.hklaw.com

Robert J. Farlow
+1 804-799-6595
Robert.Farlow@hklaw.com

January 23, 2026

**VIA EMAIL**

Les S. Bowers
Michie Hamlett, PLLC
310 4th Street N.E., 2nd Floor
P.O. Box 298
Charlottesville, Viriginia 22902
lbowers@michiehamlett.com

Lynn E. Swanson
Jones Swanson Huddell LLC
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
lswanson@jonesswanson.com

      RE:    *Schumann, et al. v. Kent, et al.*, Case No. 3:25-cv-00083 (W.D. Va.)

Dear Counsel:

    Pursuant to Fed. R. Civ. P. 26(c) and as a continuation of the parties' efforts to agree upon a Joint Discovery Plan under Fed. R. Civ. P. 26(f), the Rector and Visitors of the University of Virginia (the "BOV") and the Commonwealth of Virginia, respectfully request a meet and confer to address Plaintiffs' revisions to the Joint Discovery Plan following the Rule 26(f) conference held on January 13, 2026, as well as the discovery served thereafter on January 16th and 20th.[1]

    As an initial matter, my clients were surprised by Plaintiffs' edits to the Joint Discovery Plan, which included the following redlines addressing the production of Electronically Stored Information ("ESI"):

> The Parties further agree that expert disclosure deadlines should be workable in light of the timing of core discovery productions. Accordingly, if Defendants' initial ESI/data-map productions described in Paragraphs 9(a)-(c) are not

---

[1] Plaintiffs' First Set of Interrogatories and Requests for Production of Documents, dated January 16, 2026, were directed to the Rector and Visitors of the University of Virginia, University of Virginia Physicians Group ("UPG"), and Commonwealth of Virginia. Plaintiffs' Second Set of Requests for Production of Documents, dated January 20, 2026, were directed to "all Defendants."

Atlanta | Austin | Birmingham | Bogotá | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | London | Los Angeles | Mexico City | Miami | Monterrey | Nashville | Newport Beach | New York | Orlando | Philadelphia | Portland | Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

January 23, 2026<br>
Page 2

> <span style="color:red">substantially complete within 45 days from the filing of this Discovery Plan, then the Parties will confer in good faith regarding a reasonable, proportional adjustment to the expert disclosure deadlines to avoid prejudice and to ensure the disclosures can be completed on the basis of a meaningful factual record. For purposes of this paragraph, "substantially complete" means Defendants have produced (i) the systems identification/data maps described herein at Paragraph 9(a), (ii) the initial core production described in Paragraph 9(b), and (iii) the initial structured data production described in Paragraph 9(c), subject to any agreed protective order and reasonable redactions for privilege.</span>

*See* [DRAFT] Joint Discovery Plan at ¶ 4, attached hereto as **Exhibit A**. To be clear, there was no mention of timing or substance in connection with a "substantially complete" ESI production during the parties' Rule 26(f) conference, nor was the term "initial core production" ever raised, let alone agreed upon.

During the Rule 26(f) conference, counsel for the parties discussed an exchange of information related to I.T. systems likely to contain documents or communications relevant to the claims and allegations in Plaintiffs' Complaint for Damages and Equitable Relief. At no point during this conference did counsel for any Defendant agree to produce "data maps," nor did Defendants agree to identify or produce "Documents sufficient to identify":

a. The System's name (including vendor name and internal name, if different);
b. The System's function and purpose;
c. The type of data stored;
d. The relevant date range of data available;
e. Whether the System is active, inactive, archived, or decommissioned;
f. The custodian(s) or department(s) responsible for the System;
g. Whether the System maintains audit logs, metadata, or version histories;
h. Whether data can be exported in native format;
i. Any third-party vendors or contractors with access;
j. Any policies governing retention, deletion, or modification of data within the System;
k. For Microsoft 365 and Teams specifically . . . the tenant, the retention policies/labels applicable to Team chats, channel messages, and attachments, and the tool(s) used to place legal holds and export Teams content (including chat, channels, and attachments);
l. The physical and/or logistical location of the System (on premises, cloud-hosted, hybrid), including the hosting provider (if applicable) and whether the System is maintained by UVA, UPG, the Commonwealth, a vendor, or another third party;
m. The primary method(s) by which users access the System (web portal, desktop client, mobile app, API, VPN), and whether access is available on mobile devices;

January 23, 2026
Page 3

    n. The System's retention configuration/settings in effect from January 1, 2018 to present (including default retention periods, auto-deletion settings, archiving settings, and whether retention varies by user, department, or data type);

    o. Whether any litigation hold or preservation mechanism exists within the System, and if so, whether it has been activated for data relevant to this matter;

    p. A description of the System's available export/collection methods and formats (native export, report export, API export, database query, forensic collection), including the formats available (e.g., CSV, XLSX, JSON, PST, MSG, MBOX, PDF/TIFF) and the metadata fields included in each;

    q. Whether the System contains structured data fields relevant to billing/coding/modifiers and provider role attribution, and whether those fields are queryable and exportable in bulk;

    r. Whether the System maintains audit logs or change logs that track creation, access, edits, deletions, role and permission changes, or data exports, and the retention period for those logs;

    s. Whether the System is integrated with Epic or any other system identified in your response (including interfaces, data feeds, or downstream warehouses), and identify the integrated system(s) and nature of the integration; and

    t. [T]he individual(s) most knowledgeable about the System for purposes of ESI collection and retention (name, title, department), including the "system owner" and any eDiscovery/IT point of contact.

Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (Jan. 16, 2026), ROG No. 1; *see also id.*, RFP No. 1.

    We assume the aforementioned interrogatory and related document requests were served on the BOV, Commonwealth, and UPG shortly after the Rule 26(f) conference because there was, in fact, no agreement reached with respect to the identification of I.T. systems consistent with this level of unenforceable detail. And for good reason—as the above seeks impermissible "discovery on discovery" that does not withstand scrutiny in federal civil litigation.[2]

---

[2] *See Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *17–18 (D. Md. Feb. 21, 2017) (sustaining objections regarding "document collection, search efforts or retention efforts," because the topics were "overly broad, unduly burdensome and [sought] irrelevant information because they [sought] improper 'discovery on discovery.'"); *see also LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 158 (N.D. Ill. 2023) ("Nothing in the Federal Rules directly enables a party to serve interrogatories, document requests, or conduct depositions about a party's procedures to comply with its discovery obligations. . . . The text of the Federal Rules of Civil Procedure governs, and without an applicable rule, discovery on discovery should not be permitted."); *Peters v. USAA Gen. Indem. Co.*, 2025 WL 2021762, at *9 (D.S.D. July 18, 2025) ("[Plaintiff]'s claims are unrelated to the structure of USAA's file-keeping system. That makes the request outside the scope of what Rule 26 allows."); *In re Diisocyanates Antitrust Litig.*, 2023 WL 11938951, at *3 (W.D. Pa. Nov. 7, 2023) ("The Court disagrees with Plaintiffs' suggestion that Interrogatory No. 17 is not discovery on discovery because it undeniably seeks to elicit information on Defendants' preservation, search, collection, and retention efforts . . . . Indeed, courts generally resist permitting such discovery on discovery due to 'the danger of extending the already costly and time[-]consuming discovery process *ad infinitum*.'") (collecting cases).

January 23, 2026<br>
Page 4

  From a logistical standpoint, acknowledgment that parties in civil litigation should engage in a preliminary discussion of ESI sources likely to contain relevant documents and/or communications is also a far cry from any discussion related to "substantial completion" of ESI production. As noted above, no discussion related to the actual production of ESI occurred during the Rule 26(f) conference, nor did any party commit to such production "within 45 days from the filing of this Discovery Plan." Exhibit A at ¶ 4. Rather, before any substantive production of ESI can begin, undersigned counsel stated that both an ESI Protocol and Protective Order would need to be negotiated and finalized, especially given the large amount of data at issue—including data containing PHI/PII subject to the Health Insurance Portability and Accountability Act—and with Plaintiffs now confirming they will seek the production of data during a period of time exceeding six years.[3]

  Equally concerning were Plaintiffs' edits to the Joint Discovery Plan, incorporating a definition of "initial core production" into the prior "substantially complete" terminology referenced in Paragraph 4 as follows:

> b) Initial core production. Within 45 days of entry of this Discovery Plan, Defendants will begin producing core, non-controversial categories of documents, including applicable policies/procedures and reasonably accessible communications for agreed initial custodians, subject to any protective order and appropriate redactions for privilege.

**Exhibit A** at ¶ 9(b). Again, there was no discussion of an "initial core production" during the parties' Rule 26(f) conference—this term was not even referenced, let alone tied into a "45 day[]" production deadline. Given the breadth of the (largely, if not entirely, objectionable) discovery sought by Plaintiffs and the expansive time period set forth in the discovery requests served by Plaintiffs thus far, the BOV and Commonwealth of Virginia intend to move for a protective order based on the undue burden such discovery will necessarily place on the University's resources during an unnecessarily compressed period of time. UPG has indicated that it intends to move for a protective order as well.

  At this point, undersigned counsel is working in good faith to identify applicable I.T. Systems and sources of potentially relevant information to conduct a reasonable search for relevant, responsive and proportional discovery. However, the BOV and Commonwealth of Virginia cannot and will not agree to "substantially complete" the production of ESI on the timeline unilaterally imposed by Plaintiffs' recent edits to the Joint Discovery Plan. Nor will Defendants agree to produce actual documents identifying I.T. systems (e.g., "data maps"),

---

[3] *See* Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (Jan. 16, 2026) at 6, 9 ("Unless otherwise specified, these Requests seek information from January 1, 2018 to present . . . . Unless otherwise specified, these Requests seek Documents from January 1, 2018 to present, including electronically stored information ('ESI') in all forms . . . ."); Plaintiffs' Second Set of Requests for Production of Documents to All Defendants (Jan. 20, 2026) at 7 ("Unless otherwise specified, these Requests seek Documents from January 1, 2018 to present, including electronically stored information ('ESI') in all forms . . . .").

January 23, 2026
Page 5

litigation holds, or applicable retention periods and correspondence related thereto in a manner that acquiesces to impermissible "discovery on discovery."

As neither the substance nor timing related to substantial completion of ESI production, nor the related "core production" referenced in Plaintiffs' recent edits were discussed during the parties' Rule 26(f) conference, undersigned counsel—as well as counsel for the University of Virginia Physicians Group—propose a meet and confer to resolve any misunderstandings or otherwise narrow the scope of this dispute "in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). In addition, the parties must further confer regarding the timing and scope of ESI, depositions, expert deadlines and the case schedule based on the foregoing.

Furthermore, there are pending motions to dismiss that address the Court's lack of subject matter jurisdiction over claims set forth in Plaintiffs' Complaint for Damages and Equitable Relief. *See* Fed. R. Civ. P. 12(b)(1). Recent cases in the U.S. District Court for the Western District of Virginia have recognized the unique procedural posture these motions create when addressing issues related to the substance and timing of civil discovery. *See, e.g.*, *Convisser v. Exxon Mobile Corp.*, Case No. 3:24cv00072, 2024 WL 4833649 (W.D. Va. Nov. 19, 2024). Notably, one of those motions to dismiss was filed by an attorney at MichieHamlett PLLC who later renewed a "Motion Stay all proceedings except for briefing and argument on the pending Rule 12 motions," which stated:

> Defendants continue to believe that resolution of the motions to dismiss will moot the necessity for discovery, and no Defendant should have to bear the additional costs of dealing with Plaintiffs' multiple filings and discovery antics until such time as the Court rules on the pending motions.

*Id.* at ECF No. 133. Judge Yoon agreed, in part, finding there was "good cause for delaying both the deadline for issuing a Rule 16(b) scheduling order and the deadline for the parties to hold a Rule 26(f) conference," and ruled: "The Court will issue a Rule 16(b) scheduling order, if necessary, after resolving Defendants' motion to dismiss." *Id.* at *4.

Consistent with Judge Yoon's reasoning and ruling in the aforementioned case, there are some proactive discovery measures that <u>both</u> Plaintiffs and Defendants can undertake while motions to dismiss remain pending. However, such measures should not extend to the production of ESI prior to agreement on an ESI Protocol and entry of a Stipulated Protective Order to govern highly-sensitive PHI/PII.

Counsel for the BOV, Commonwealth of Virginia, and UPG will remain available for a meet and confer at any time on **Monday, January 26th** to discuss these issues in further detail before proceeding with a motion for protective order pursuant to Fed. R. Civ. P. 26(c). Please let us know what time would work best for your team and we can circulate a calendar invite with dial-in information.

Respectfully,

*[signature: BJFARLOW]*

Robert J. Farlow

Enclosure(s): Exhibit A

Cc: Counsel of record