CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

June 02, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

DR. JEFFREY S. YOUNG, ET AL.,

       *Plaintiffs,*

  v.

RECTOR & VISITORS OF THE
UNIVERSITY OF VIRGINIA, ET AL.,

       *Defendants.*

CASE NO. 3:25-CV-00083

MEMORANDUM OPINION & ORDER

JUDGE NORMAN K. MOON

Drs. Jeffrey Young, Kenan Yount, Mark Roeser, and John Kern ("Physician Plaintiffs")—who are current and former employees of the University of Virginia ("UVA"), its medical school, and medical center—claim that Dr. Craig Kent ("Dr. Kent"), the former CEO of UVA Health System, and his leadership team demanded that physicians increase the cost of medical procedures through fraudulent billing practices. *See* Dkt. 80. The Physician Plaintiffs, who are/were veteran surgeons at UVA, fought against these practices, which they believed were illegal and put patient lives at risk. Because of their opposition, the Physician Plaintiffs allegedly suffered harassment, threats of professional retaliation, disciplinary action, and demotion.

They assert five causes of action against the Rector and Visitors of UVA, the UVA School of Medicine, the UVA Health System, the UVA Medical Center, UVA Physicians Group ("UPG"), and the cast of characters who led the Medical Center between 2020 and 2025—including, Dr. Kent, Dr. Melina Kibbe, Ms. Wendy Horton, Dr. Allan Tsung, Dr. Ourania Preventza, and Dr. Kim de la Cruz (collectively, "Medical Leaders"). Those causes of action are: (1) a civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) RICO conspiracy; (3) False

Claims Act ("FCA") retaliation; (4) Virginia Fraud Against Taxpayers Act ("VFATA") retaliation; and (5) Virginia Fraud and Abuse Whistleblower Protection Act ("VFAWPA") retaliation. *See* Am. Compl., Dkt. 80. Defendants move to dismiss these claims. Dkts. 90, 92, 94, 97, 99.

The current record consists of the 159-page amended complaint, 1,200 pages of exhibits, and hundreds of pages of briefing. Ordinarily, this amount of material (and correspondent effort expended by the parties) suggests a complex resolution. However, at this stage, the path forward is comparatively simple. First, the Court will dismiss Counts I and II because the Physician Plaintiffs have failed to allege that they have statutory standing to assert their RICO claims. Second, the Court will dismiss Dr. Roeser's claims in Counts III and IV because he has not sufficiently alleged that he engaged in protected activity as defined by the FCA and VFATA. Third, the Court will dismiss Drs. Young's, Yount's, and Kern's FCA and VFATA claims against Drs. Kent, Kibbe, Tsung, Preventza, and de la Cruz and Ms. Horton because neither statute permits recovery against supervisors in their individual capacities. And finally, the Court will dismiss Drs. Young's, Yount's, Roeser's, and Kern's VFAWPA claims against UVA and UPG because said claims can only be brought against their supervisors in their official capacities.

These dismissals are without prejudice. The Physician Plaintiffs shall file a second amended complaint. Defendants will then respond by presumably reiterating and expanding upon their 12(b)(1) and 12(b)(6) arguments.[1] The Court will address those additional arguments after receiving sufficient briefing and evidence.

---

[1]   Because sovereign immunity is a jurisdictional defense, Defendants may raise it at the motion to dismiss stage. *See Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 428 (4th Cir. 2025). As the Court already noted, though, Defendants must mount a factual challenge to jurisdiction by coming forward with evidence that: (1) they are legally indistinct from the Commonwealth, and (2) the Commonwealth discharges any legal judgments against them. Dkt. 137 at 2 (citing *Galette v. New Jersey Transit Corp.*, 607 U.S. __, 146 S. Ct. 854, 869–71 (2026)). Because Defendants did not muster this evidence during their first round of briefing or engage

## I.    BACKGROUND

Plaintiffs allege that beginning in February 2020 and running through 2025, Dr. Kent and his leadership team directed subordinates at UVA Health "to adopt and expand fraudulent billing and documentation practices," *see* Dkt. 80 ¶ 5, with the purpose of "unlawfully increas[ing] revenues . . . and improv[ing] ranking metrics, thereby increasing [the Medical Leaders'] compensation, prestige and career leverage," *id.* ¶ 3. Dr. Kent and the other Medical Leaders allegedly enforced their unlawful billing scheme by "retaliat[ing], intimidat[ing], and harass[ing] . . . those who objected," including the Physician Plaintiffs. *Id.* ¶ 5.

"The fraudulent billing scheme involved the misuse of Current Procedural Terminology ("CPT") codes and medical billing modifiers designed to allow the defendants to collect more revenue for the same amount of work." *Id.* ¶ 15. The Medical Leaders instructed UVA physicians to:

- Overuse CPT code 99291, a "critical care billing code reserved for a very limited list of life-sustaining interventions including mechanical ventilation, septic shock, or severe acidosis," *id.* ¶ 15, n. 3;

- Overuse the billing modifier -22, which allows "billing for services that . . . require an unusual amount of additional time or effort due to higher levels of complexity, severity, or risk," *id.* ¶ 15, n. 4;

- Misuse billing modifier -62, which allows "billing for two co-surgeons, typically from different specialties, who are both required to perform a single procedure on the same patient during the same operative session," *id.* ¶¶ 15, 228; and

- Misuse billing modifier -82 to allow two attending physicians to bill for the same surgery by fraudulently certifying that a resident physician was "either not present or lacked the necessary skills for the particular surgery." *Id.*

---

with the legal standard discussed in *Galette*, the Court will defer consideration of their sovereign immunity arguments until after Defendants respond to the Physician Plaintiffs' second amended complaint.

The Medical Leaders enforced these fraudulent billing practices through the summary removal (or demotion) of anyone who disagreed with them and by threatening dissenting physicians with being blacklisted in the medical community. *Id.* ¶¶ 125, 232. The Medical Leaders fired senior leadership at the medical center and removed more than 550 faculty members from the medical school, including 16 of the 21 clinical department chairs, as the scheme depended upon Dr. Kent installing loyalists in senior leadership positions at UVA regardless of their qualifications. *Id.* ¶¶ 127–139. According to Plaintiffs, this scheme took a fatal turn on at least two occasions when surgeons— hired because of their willingness to enforce the Medical Leaders' fraudulent billing scheme rather than their surgical prowess—killed patients because of their gross incompetence. *Id.* ¶¶ 186–189, 199–214.

"When faculty or staff attempted to resist the [Medical Leaders'] fraudulent practices by raising concerns about patient safety or trying to solve for the gross incompetence causing patient safety issues, [the Medical Leaders'] routinely responded with threats, intimidation, and discipline designed to perpetuate the scheme and dissuade clinicians from reporting the fraud." *Id.* ¶ 225. The Physician Plaintiffs opposed the Medical Leaders' practices, and all of them faced retribution. *Id.* ¶ 226. For example, Dr. Jeffrey Young, who objected to the Medical Leaders' billing practices, was removed from his leadership roles and chose to retire rather than continue to work under the Medical Leaders. *Id.* ¶¶ 226, 257–274. Similarly, Dr. Yount's "continued employment became untenable when he was stripped of his clinical decision-making authority, subjected to sham peer review, relieved of all his clinical and administrative leadership positions at [UVA Medical Center], and bypassed for promotion after reporting numerous instances of fraud." *Id.* ¶¶ 226, 277–305. Likewise, Dr. Roeser was "subjected to false 'Be Safe' reports after reporting unsafe practices," which caused him to leave UVA rather than face continued retaliation. *Id.* ¶¶ 226, 307–322. And

finally, Dr. Kern was "stripped of titles, administrative and leadership responsibilities, and participation in decision making after he raised fraud concerns." *Id.* ¶¶ 226, 325–354.

As of 2025, most of the Medical Leaders have departed UVA and its health system except Dr. Tsung. *See* H'ring Tr. 5/6/2026, Dkt. 145 at 22:17–21. The Physician Plaintiffs—some of whom continue to work for UVA and are working to reverse the Medical Leaders' practices—seek compensation for the harassment, bullying, and retaliation they allegedly suffered at the hands of the Medical Leaders. *Id.* ¶¶ 403–428.

## II.   LEGAL STANDARDS

To resolve Rule 12(b)(6) motions, the Court applies the familiar *Twombly*/*Iqbal* standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court accepts Plaintiffs' factual allegations as true and draws all reasonable inferences in their favor. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). Specifically, the Court treats the question of whether Plaintiffs have statutory standing under RICO as a 12(b)(6) issue. *E.g.*, *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (abrogated on other grounds) (civil RICO standing is different from Article III standing in that it does not implicate the court's subject matter jurisdiction); *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018) (treating civil RICO standing as a 12(b)(6) issue).

The Court will defer ruling on the parties' jurisdictional arguments until after the Physician Plaintiffs amend their complaint, so it is unnecessary to discuss the standards governing Rule 12(b)(1) motions.

### III.    ANALYSIS

#### A.  RICO

Defendants move to dismiss the Physician Plaintiffs' RICO and RICO conspiracy claims. A civil RICO claim has four essential elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *FX Aviation Cap. LLC v. Guerrero*, 2025 WL 521303, at *7 (4th Cir. Feb. 18, 2025) (citing *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011)). It is unnecessary to engage with these elements, though, because the Physician Plaintiffs' claims fail for a threshold reason—they have not alleged any harm directly caused by racketeering activity and, therefore, do not have standing under RICO.

#### 1.  Statutory Standing

To have standing under RICO, a party's property or business must be injured and that injury must be proximately caused by an act of racketeering.[2] *Slay's Restoration*, 884 F.3d at 493; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265–66 (1992); *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983)). RICO's proximate causation element requires a "direct relationship" between the injury and the racketeering activity. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 598 (2025) (RICO demands "some direct relation between the injury asserted and the injurious conduct alleged."). This requires "a proximity of statutory violation and injury such that the injury is

---

[2]    18 U.S.C. § 1964(c), which establishes the civil remedy for a RICO violation, provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

sequentially the direct result—generally at 'the first step' in the chain of causation." *Slay's Restoration*, 884 F.3d at 494 (quoting *Assoc. Gen. Contractors of Cal.*, 459 U.S. at 534).

Here, the Physician Plaintiffs allege they were demoted and, in some cases, constructively terminated. *See generally*, Dkt. 80. However, "termination of employment is not, as a matter of law, a racketeering act."[3] *Zahler v. Jackson Lewis P.C.*, 2026 WL 391921, at *3 (E.D. Pa. Feb. 11, 2026). For an overt act to qualify as an "act of racketeering or otherwise wrongful under RICO, that act must be independently wrongful under some substantive provision of the RICO statute." *Johnson v. Hoffa*, 196 F. App'x 88, 90 (3d Cir. 2006). An allegation that a plaintiff is injured "merely by a non-racketeering act in furtherance of a broader RICO conspiracy is insufficient to confer standing." *Id.* The Supreme Court made that clearly in a factually apposite case—*Beck v. Prupis*. 529 U.S. 494 (2000). In that case, the Supreme Court held that an employee who was fired for refusing to participate in a RICO enterprise and for threatening to report RICO activities did not have standing to sue under RICO because the overt act—*i.e.*, termination of employment— was not an act of racketeering. *Beck*, 529 U.S. at 507 ("[A] person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute."); *see also DiGiglio v. U.S. Xpress, Inc.*, 293 F. Supp. 3d 522, 526 (E.D. Pa. 2018)) ("[A] plaintiff fired for complaining about or reporting allegedly illegal acts cannot bring a RICO claim; the plaintiff must be a direct victim of an act of

---

[3]    *See also Arroyo v. Oprona, Inc.*, 736 F. App'x 427, 429 (5th Cir. 2018); *Bowman v. Western Auto Supply Co.*, 985 F.2d 383 (8th Cir. 1993); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294-95 (9th Cir. 1990); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990); *O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1987); *Mariani v. Nocco*, 2022 WL 912093, at *5 (M.D. Fla. Mar. 29, 2022); *Masin v. Vistakon Pharms., LLC*, 2010 WL 11594971, at *3 (D. Nev. June 14, 2010); *Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1274 (D. Kan. 2005); *McFarland v. Bryan Cave LLP*, 2004 WL 7339974, at *3 (S.D. Ill. Sept. 21, 2004).

racketeering."). Put simply, termination of employment is not, as a matter of law, a racketeering act, and any harm deriving from said termination does not confer standing under RICO.

As already discussed, Drs. Young, Yount, Roeser, and Kern stood up to the Medical Leaders for instituting policies that fraudulently inflated procedure costs and criticized the Medical Leaders' practice of hiring and retaining incompetent physicians who placed patients at serious risk of injury or death. Dkt. 80 ¶¶ 153, 225–229, 257–274, 277–305, 307–322, 325–354. The Medical Leaders threatened the Physician Plaintiffs with professional harm if they did not participate in the fraudulent billing scheme or at least remain silent. *Id.* And because the Physician Plaintiffs did not stay silent, they suffered professional and economic harm at the hands of the Medical Leaders.

While the Physician Plaintiffs' harms are almost certainly sufficient to satisfy Article III standing,[4] they are insufficient for statutory standing under RICO because Congress constricted the civil RICO statute to only cover harms to business or property *directly* caused by racketeering activity. *Horn*, 604 U.S. at 598; *Beck*, 529 U.S. at 507. After comparing the allegations in this case to the allegations in *Beck*, it is hard to see how the Physician Plaintiffs have statutory standing. Little daylight exists between the two cases, and this Court is bound by the Supreme Court's conclusion that an employee does not have RICO standing to sue an employer who terminates (or otherwise professionally retaliates) against the employee for refusing to participate in a RICO enterprise.

---

[4]    To plead Article III (or constitutional) standing, a plaintiff must demonstrate "(i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

Accordingly, their RICO claims must be dismissed for lack of statutory standing.[5]

### B. Retaliation Claims

In addition to their RICO claims, the Physician Plaintiffs also allege that Defendants retaliated against them in violation of the FCA, VFATA, and VFAWPA. The Court will address each of these claims in turn.

### 1. FCA & VFATA

Successful FCA and VFATA claims require proof of three basic elements: (1) the employee engaged in "protected activity" by acting in furtherance of a qui tam suit; (2) the employer knew of these acts; and (3) the employer took adverse action against the employee because of these acts.[6] *See Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013); *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997). There are two types of protected activity: (1) acts "in furtherance of an [FCA or VFATA action]," or (2) "other efforts to stop 1 or more [FCA or VFATA violations]." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018). Only the second type of protected activity—reporting FCA or VFATA violations—appears to be at issue here.

---

[5]   To be sure, if the Physician Plaintiffs' allegations are true (which the Court assumes they are at this stage), there are potential plaintiffs who could have statutory standing to bring RICO claims. The Physician Plaintiffs themselves identified two such plaintiffs, Humana and the United States (on behalf of Medicare)—both of whom were directly harmed by the alleged racketeering activity (*i.e.*, the fraudulent billing). Dkt. 80 ¶¶ 196, 213, 218, 285. Presumably, anyone who overpaid for medical services at UVA during the criminal enterprise—like private insurers, the Commonwealth of Virginia, or patients who paid higher co-pays or deductibles—were directly harmed by the racketeering activity. However, the Physician Plaintiffs are simply not within the class of plaintiffs who were directly harmed by the alleged enterprise.

[6]   The "similarity of the language of the [FCA and VFATA] makes it clear that the Virginia General Assembly intended to pattern the [VFATA] after the FCA." *United States v. Centra Health, Inc.*, 724 F. Supp. 3d 549, 559 n.8 (W.D. Va. 2024). Given these similarities, this Court treats the Physician Plaintiffs' FCA and VFATA claims together. *United States v. Walgreen Co.*, 711 F. Supp. 3d 601, 612 (W.D. Va. 2024).

### a. FCA & VFATA claims against UVA and UPG

Setting aside Defendants' immunity arguments, which the Court will address after additional briefing, Drs. Yount, Young and Kern have pleaded these three elements against their *employer(s)*. For example, they allege that they confronted the Medical Leaders about fraudulent billing and that they were demoted, harassed, and deprived of surgical opportunity because they engaged in this protected activity. *See*, *e.g.*, Dkts. 145–148, 232, 258–263, 281, 333–334. At this stage, the Court can infer that UVA and UPG had notice of the protected activity because Drs. Yount, Young and Kern complained to senior-level executives involved with both entities. *See United States ex rel. Sovitsky v. SOC LLC*, 2025 WL 1042823, at *9 (D. Md. Apr. 8, 2025) ("[C]ourts may infer that an employer is on notice of a potential FCA action when the employee reports or complains to management about fraudulent conduct with respect to billing."); *see also United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 205 (4th Cir. 2018) (inferring notice to employer when employee complained to management); *Nifong v. SOC, LLC*, 190 F.Supp.3d 549, 559 (E.D. Va. 2016) (same).

The Court must also reject UPG's argument that it took no adverse action against the Physician Plaintiffs, *see* Dkt. 98 at 22–23, because the Physician Plaintiffs allege that it did take adverse action(s) against them. *See* Dkt. 80 ¶ 64 ("Through this campaign of retaliation, witness tampering, and obstruction, the UVA Affiliates' leadership and UPG not only pressured Dr. Young to leave but removed him from his leadership positions and effectively forced him to retire."); ¶ 65 ("UVA Affiliates' leadership and UPG not only pressured Dr. Yount to leave but effectively removed him from his position and forced him out of the institution."); ¶ 67 ("[UPG] removed [Dr. Kern] from his role as Co-Director of the Heart and Vascular Service Line, stripping him of some of his administrative and leadership responsibilities, excluding him from the decision-

making, and bypassing him for clinical scheduling."). At the motion to dismiss stage, the Court cannot consider UPG's alternative view of the facts and it cannot take judicial notice of UPG's authority (or lack thereof) to take adverse action against the Physician Plaintiffs. *See Drumheller v. Cent. Virginia Elec. Co-op.*, 2006 WL 2403334, at \*6 (W.D. Va. Aug. 18, 2006) (the court must "tak[e] all facts alleged in the complaint as true and resolv[e] all doubts and draw[] all reasonable inferences in the plaintiff's favor").

On these allegations, though, it does not appear that Dr. Roeser engaged in protected activity under the FCA or VFATA. While Dr. Roeser certainly complained about the new regime, it appears he focused his concerns on the risks to patient safety rather than complaining about Medicare or Medicaid fraud. *See, e.g.*, Dkts. 66, 306, 310–319. The Amended Complaint insinuates that Dr. Roeser also complained about fraudulent billing, but there are no direct allegations that Dr. Roeser reported fraud that would have affected the treasuries of the Commonwealth of Virginia or the United States. His concerns about patient safety are not actionable under the FCA or VFATA, and therefore, on these limited facts, Dr. Roeser has failed to state FCA or VFATA claims.

### b. FCA & VFATA claims against the Medical Leaders

In addition to suing UVA and UPG for retaliation under the FCA and VFATA, the Physician Plaintiffs also sue Drs. Kent, Kibbe, Tsung, Preventza, and de la Cruz and Ms. Horton. These claims cannot survive, though, because the FCA's and VFATA's statutorily prescribed remedies foreclose individual supervisory liability.[7] Because Drs. Kent, Kibbe, Tsung, Preventza, and de la

---

[7]    Judge Ellis from the Eastern District of Virginia explained this point, saying:

> [T]he text of § 3730(h), read as a whole, forecloses the argument that a supervisor may be sued in his individual capacity. This is so because the current version of § 3730(h) continues to prescribe mandatory remedies, such as reinstatement. Such mandatory

Cruz and Ms. Horton were, at most, the Physician Plaintiffs' supervisors, the FCA and VFATA claims against them cannot stand.[8]

### 2. VFAWPA

For their sixth, and final cause of action, the Physician Plaintiffs assert a violation of the VFAWPA, which protects state and local employees who report "wrongdoing or abuse" from retaliation. *See* Va. Code § 2.2-3011(B). To fall under the statute's protection, the employee must report "information" that they believe is "accurate," *id.* § 2.2-3011(C), and that information must relate to "a violation . . . of a federal or state law or regulation, local ordinance, or a formally adopted code of conduct or ethics of a professional organization designed to protect the interests of the public or employee," *id.* § 2.2-3010. If an employer retaliates against an employee for making a good faith report of a legal violation, the employee may obtain one or more of these statutory remedies: "(i) reinstatement to the same position or, if the position is filled, to an equivalent position; (ii) back pay; [or] (iii) full reinstatement of fringe benefits and seniority rights." *Id.* § 2.2-3011(D).

---

language undermines the argument that § 3730(h) contemplates individual supervisor liability because, as the D.C. Circuit observed in rejecting the argument that the pre–2009 provision allowed supervisor liability, "a mere supervisor could not possibly grant [remedies such as reinstatement] in his individual capacity."

*Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 749–50 (E.D. Va. 2016) (quoting *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001)).

[8]     Again, to the extent the Physician Plaintiffs can allege facts showing that Drs. Kent, Kibbe, Tsung, Preventza, and de la Cruz and Ms. Horton were in fact *employers* within the meaning of the FCA and VFATA, the Court is not precluding the Physician Plaintiffs from bringing retaliation claims against these individuals. Based on these pleadings, though, the Court has no factual basis for inferring that Drs. Kent, Kibbe, Tsung, Preventza, and de la Cruz and Ms. Horton were employers and, therefore, subject to FCA and VFATA liability.

VFAWPA claims can only be pleaded against supervisors in their official capacities, so the Physician Plaintiffs cannot state VFAWPA claims against their "employers."[9] Accordingly the VFAWPA claims against UVA and UPG must be dismissed. Moreover, only government employees can recover under the VFAWPA. *See* Va. Code § 2.2-3011(B). Claiming "state employee" status flies in the face of the Physician Plaintiffs' argument that the Defendants are not instruments of the state. *See* Dkt. 110 at 8–32; Dkt. 127. While Plaintiffs can certainly plead "state employee" status in the alternative, their VFAWPA claims may well rise and fall with the sovereign immunity issue. If UVA and UPG are not arms of the state, it is difficult to see how the Physician Plaintiffs could claim state employee status based on their employment at those institutions.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendants' motions to dismiss (Dkts. 90, 92, 94, 97 and 99) are **GRANTED IN PART** as follows:

- The RICO claims against them are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

- Dr. Roeser's FCA and VFATA claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

- Drs. Young's, Yount's, and Kern's FCA and VFATA claims against Drs. Kent, Kibbe, Tsung, Preventza, and de la Cruz and Ms. Horton are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

---

[9]    The VFAWPA defines "employer" as "a person supervising one or more employees, including the employee filing a good faith report, a superior of that supervisor, or an agent of the governmental agency." Va. Code § 2.2-3010.

- And finally, Drs. Young's, Yount's, Roeser's, and Kern's VFAWPA claims against UVA and UPG are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

It is further **ORDERED** that Plaintiffs shall file a second amended complaint on or before **June 15, 2026**.[10] Defendants' responsive pleading(s) to the second amended complaint are due on or before **July 1, 2026**. Any responses in opposition are due on **August 3, 2026**,[11] and replies are due **August 10, 2026**. Should the parties wish to have oral argument, they must contact the courtroom deputy with fourteen (14) days of this Order to schedule oral argument between August 12 and 19, 2026.

UVA has also filed a motion for leave to file supplemental briefing (Dkt. 140). That motion is **DENIED AS MOOT**. The Court also **STRIKES** UVA's Supplemental Brief in Support of its Motion to Dismiss for Lack of Jurisdiction (Dkt. 147), which was filed without leave of court. UVA and any other Defendant can include their sovereign immunity argument(s) in their responsive pleading(s) to Plaintiffs' second amended complaint.

Finally, because merits discovery has been stayed pending resolution of Defendants' 12(b)(1) motions, *see* Dkt. 135, and the current trial date is no longer viable, the Court **VACATES**

---

[10]     When amending their complaint, Plaintiffs should be mindful of Rule 8's "short and plain statement" requirement. Fed. R. Civ. P. 8(a)(1). Their prior complaints bordered on being prolix. This case is not an opportunity to air general grievances against UVA or Drs. Horton, Kent, Kibbe, Tsung, Preventza, and de la Cruz. Factual pleadings must relate to the causes of action pled.

[11]     To the extent the Physician Plaintiffs wish to conduct jurisdictional discovery on the question of whether UVA and its affiliated entities are entitled to sovereign immunity, they should complete that discovery before submitting their opposition briefs to Defendants' motion(s) to dismiss. The Physician Plaintiffs have already gotten a preview of Defendants' sovereign immunity arguments and the type of evidence they will use to support those arguments. *E.g.*, Dkt. 147. This should expedite any jurisdictional discovery. To facilitate a timely and efficient discovery process, Defendants shall have fourteen (14) days to respond to interrogatories or requests for production rather than the thirty (30) days provided by the Federal Rules of Civil Procedure.

14

the Pretrial Order (Dkt. 39) and the jury trial setting (Dkt. 54). The Court will issue an Amended

Scheduling Order if/when appropriate.

The Clerk is directed to provide a copy of this Memorandum Opinion & Order to all parties

of record.

Entered this  2nd day of June, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

15